**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LAURA PATRICIA HERAS, | ) | Chapter 7 |
| | ) | Docket No. 21-11005 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| NEWMARKET TRIANGLE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. |
| | ) | |
| v. | ) | |
| | ) | |
| LAURA PATRICIA HERAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>COMPLAINT</u>

Newmarket Triangle LLC ("<u>Newmarket</u>" or the "<u>Plaintiff</u>"), by and through its attorneys,

Sheehan Phinney Bass & Green, P.A. and Fisher Legal, P.A., commences the instant adversary

proceeding pursuant to 11 U.S.C. §§ 105, 523 and 727 and Fed. R. Bankr. P. 7001 *et seq*., and

respectfully alleges:

### I.    <u>JURISDICTION AND VENUE</u>

1.    The United States Bankruptcy Court for the District of Massachusetts (the

"<u>Bankruptcy Court</u>") has subject matter jurisdiction over this adversary proceeding pursuant to

28 U.S.C. § 1334.

2.    Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409.

{S2163543.1}

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (I), (J) and (O).

## II.      PARTIES

### A.      The Plaintiff

4.      Newmarket is a Massachusetts limited liability company with a registered address of 217 Hanover Street, #184, Boston, Massachusetts.

### B.      The Defendant

5.      Laura Patricia Heras ("Ms. Heras" or the "Debtor") is an individual debtor with a last known residential address of 20 Laura Road, Waban, Massachusetts.

## III.      FACTS

### A.      Newmarket Judgment and Foreclosures Scheduled

6.      On August 19, 2019, Newmarket commenced an action in Suffolk Superior Court in the Commonwealth of Massachusetts ("Suffolk Superior Court") against the Debtor, individually, the Heras Family Real Estate Trust, TCNR, LLC ("TCNR"), LRNCT, LLC ("LRNCT"), Nicholas Heras, Jr. ("Mr. Heras") and Heras Development Corp (collectively, the "Defendants"), Newmarket Triangle, LLC v. TCNR LLC et al., Superior Court, Civil Action No. 1984CV2641 (the "State Court Action").

7.      In the State Court Action, Newmarket asserted claims for breach of cross-collateralized commercial loans that are secured by various mortgages encumbering real estate in Massachusetts and New Hampshire and litigated its right to foreclose under these mortgages. Newmarket had acquired the loans originally made by the Northern Bank & Trust Company, and the Defendants were borrowers and/or guarantors.

8.      The Debtor, in addition to being a guarantor on the various loans acquired by Newmarket, is also the Trustee of the Heras Family Real Estate Trust and is a manager of and 50% interest holder of LRNCT and TCNR, both borrowers under the various loans.  The Debtor is married to Mr. Heras.

9.      On February 14, 2021, the Suffolk Superior Court (Ricciuti, J.) entered an order titled Judgment Following Damages Assessment Hearing (the "Judgment Order"), a copy of which is attached as Exhibit A.

10.     The Judgment Order ruled that "the total damages owed by the Defendants to Newmarket is $37,082,223.40."  Judgment Order, p. 7.

11.     Included in the Judgment Order, the Court ruled, among other things, that the Defendants "unlawfully [took] rental payments to which they were plainly not entitled causing further expense …"  Judgment Order, p. 6.  The Court explained that the "Defendants also diverted to themselves $296,295.06 in rent payments, in violation of their responsibilities under the Notes."  Id.  The Court ruled that the "Defendants improperly took for themselves rent payments from a tenant (Cowabungas) that were supposed to go to [Newmarket] during the period January 2019 to June 2020, and that those diverted payment amounted to $296,295.06 …."  Id.

12.     On February 16, 2021, the Judgment was issued, finding the Defendants, jointly and severally, liable to Newmarket in the total amount of $43,713,550.78 (the "Judgment"), a copy of which is attached as Exhibit B.

13.     Simultaneously, with the damages assessment proceeding in the State Court Action and as a result of the borrowers' failure to pay all amounts due under the loans,

Newmarket initiated a foreclosure of the cross-collateralized mortgage and scheduled foreclosure sales of the following mortgaged properties for March 12, 2021 (the "Foreclosure Sales"):

- 707-725 Huse Road, Manchester, New Hampshire ("Huse Road");

- Newmarket Square Triangle, Boston, Massachusetts ("Newmarket Property"); and

- 20 Laura Road, Waban, Massachusetts ("Laura Road").

B.     TCNR, LRNCT and Mr. Heras Bankruptcy Filings

14.     On the eve of the Foreclosure Sales, TCNR and LRNCT filed Chapter 11 bankruptcy petitions with the Bankruptcy Court. *In re TCNR*, 21-10310, Dkt. No. 1; *In re LRNCT,* 21-10311, Dkt. No. 1.

15.     A mere hours before the foreclosure at Laura Road, Mr. Heras filed a skeletal Chapter 11 petition with the Bankruptcy Court to halt that sale, claiming a beneficial interest in the trust that owns the property. *In re Nicholas Heras, Jr.,* 21-10313, Dkt. No. 1.

16.     All of the Foreclosure Sales were postponed.

C.     TCNR Bankruptcy Schedules and Statement of Financial Affairs

17.     On April 9, 2021, TCNR filed its Schedules of Assets and Liabilities and Statement of Financial Affairs. *In re TCNR*, 21-10310, Dkt. Nos. 16, 17.

18.     In its Schedules of Assets and Liabilities, on Schedule A/B, TCNR stated it had no cash or cash equivalents and listed no open bank accounts. *In re TCNR*, 21-10310, Dkt. No. 16, p. 2.

19.     In its Statement of Financial Affairs (Question 18), TCNR identified two bank accounts that had closed within the year of the bankruptcy filing: Northern Bank & Trust and First Republic Bank. *In re TCNR*, 21-10310, Dkt. No. 17, p. 8. The First Republic Bank account

was identified as ending with the account numbers 3-5-4-7, but information on the date of

account closing and the amount in the account were not disclosed.  *Id.*

20.     In its Statement of Financial Affairs (Question 28), TCNR listed the Debtor as

being a Manager and having a 50% interest in the entity.  *Id.* at p. 14.

D.     LRNCT Bankruptcy Schedules and Statement of Financial Affairs

21.     On April 12, 2021, LRNCT filed its Schedules of Assets and Liabilities and

Statement of Financial Affairs.  *In re LRNCT*, 21-10311, Dkt. No. 25.

22.     In its Schedules of Assets and Liabilities, on Schedule A/B, LRNCT stated it had

no cash or cash equivalents and listed no open bank accounts.  *Id.* at p. 7.

23.     In its Statement of Financial Affairs (Questions 3-4), LRNCT stated that no

payments were made to creditors within 90 days of the filing of the case and that $28,500.00 was

paid to Mr. Heras within one year before the filing of the case.  *Id.* at p. 26.

24.     In its Statement of Financial Affairs (Question 18), LRNCT stated that no bank

accounts in its name had closed within the year of the bankruptcy filing.  *Id.* at p. 29.

25.     In its Statement of Financial Affairs (Question 28), LRNCT listed the Debtor as

being a Manager and having a 50% interest in the entity.  *Id.* at p. 31.

E.     Mr. Heras Bankruptcy Schedules and Statement of Financial Affairs

26.     On April 12, 2021, Mr. Heras filed his Schedules of Assets and Liabilities and

Statement of Financial Affairs.  *In re Nicholas Heras, Jr.,* 21-10313, Dkt. No. 27.

27.     In his Schedules of Assets and Liabilities, on Schedule A/B, Mr. Heras lists three

bank accounts to which he owns or has a legal or equitable interest.  *Id.* at p. 9.  At the time of

the bankruptcy filing, Mr. Heras listed the bank accounts with the following values:  Citizens

Bank (0710) with a value of $381.25, Santander Bank (5890) with a value of $951.33 and

Suntrust (no account information given) with $0 value. *Id.*

28.    In his Schedule I, other than contributions from adult children, Mr. Heras listed no

personal income.  In Schedule J, Mr. Heras listed his expenses as $6,900.71.  *Id.* at pp. 26-29.

29.    In his Statement of Financial Affairs, Mr. Heras stated that within one year of the

bankruptcy filing, that no accounts or instruments held in his name, or for his benefit, were

closed, sold, moved or transferred (Question 20).  *Id.* at p. 35.

F.    TCNR, LRNCT and Mr. Heras Bankruptcy Case Dismissals; Foreclosures Proceed

30.    During the course of the TCNR, LRNCT and his bankruptcy cases, Mr. Heras

testified that the nearly $300,000 in rent proceeds from a Huse Road tenant (an LRNCT tenant)

was being used for personal expenses and deposited into an account held with First Republic

Bank.  The only First Republic Bank account that was disclosed was owned by TCNR (account

ending in 3547) and closed prior to the bankruptcy filing.

31.    During his initial Section 341 Meeting of Creditors Mr. Heras's ownership

interest in various entities was questioned.  In particular, in his schedules, Mr. Heras stated that

he is a 50% owner of an entity called Seal Watch, LLC ("Seal Watch").  Mr. Heras identified the

value of his 50% interest in Seal Watch as $0.  *See In re Nicholas Heras, Jr.*, 21-20313, Dkt. No.

27 p. 10.

32.    While under oath during the April 20, 2021 Section 341 Meeting of Creditors, Mr.

Heras testified that he knew nothing of Seal Watch's operation, and instead explained that it was

his mother-in-law's business that his wife, the Debtor, managed.

33.     In July 2020, Seal Watch acquired 4 and 6 Sheep Pond Road, Nantucket, Massachusetts (the "Nantucket Properties").  According to public records, the Nantucket Properties were acquired for $205,000 by virtue of a release deed.

34.     Just two months later, on September 16, 2020, Seal Watch granted a mortgage on the Nantucket Properties for $1,250,000 to Secured Bridge Fund I, LP.  Mr. Heras signed this mortgage as manager of Seal Watch and the notary jurat states that Mr. Heras "acknowledged … that he signed the [mortgage] … as Manager and Authorized Signatory of Seal Watch."

35.     On March 28, 2021, *after the filing of Mr. Heras's bankruptcy case and without any disclosure of the sale and only weeks before his Section 341 Meeting testimony*, Seal Watch conveyed the Nantucket Properties by deed for $1,650,000.00.  Mr. Heras executed the deed as manager of Seal Watch.

36.     Upon the details of the sale coming to light, Mr. Heras informed the parties that his interest in Seal Watch was mistakenly identified at 50% when it should have been 5%. Despite requests for financial information concerning the transaction (*e.g.*, settlement statement), Mr. Heras failed to provide complete information.

37.     On May 4, 2021, Newmarket filed its Motion to Dismiss or Convert Cases to have the Chapter 11 cases of TCNR, LRNCT and Mr. Heras dismissed or converted (the "Motion to Dismiss").  *In re TCNR*, 21-10310, Dkt. No. 46; *In re LRNCT*, 21-10311, Dkt. No. 50; *In re Nicholas Heras, Jr.,* 21-10313, Dkt. No. 48.

38.     In the Motion to Dismiss, Newmarket argued, among other things, that the cases of TCNR, LRNCT and Mr. Heras should be dismissed because: (i) none of the debtor parties made a substantive filing in the two months in bankruptcy, (ii) each were hopelessly in debt with no reorganization plan, (iii) each failed to meet basic disclosure requirements, (iv) Mr. Heras

secretly sold estate property post-bankruptcy, and (v) Mr. Heras, on behalf of himself, TCNR and

LRNCT failed to attend a continued 341 Meeting of Creditors. *Id.*

39.     Ultimately, the bankruptcy cases of TCNR, LRNCT and Mr. Heras were all

dismissed by order of the Bankruptcy Court on June 2, 2021. *In re TCNR*, 21-10310, Dkt. No.

72; *In re LRNCT*, 21-10311, Dkt. No. 82; *In re Nicholas Heras, Jr.,* 21-10313, Dkt. No. 71.

40.     As a result of the dismissals, the Foreclosure Sales were allowed to proceed. On

July 8, 2021, Newmarket conducted the foreclosure of Huse Road and the Newmarket Property.

41.     Prior to the scheduled sale of the Laura Road property, Newmarket was informed

of the Debtor's filing of a Chapter 11 bankruptcy petition. The sale of Laura Road was

postponed because of the Debtor's alleged beneficial interest in the Heras Family Real Estate

Trust that owned the property.

G.     The Debtor's Bankruptcy Schedules and Statement of Financial Affairs

42.      On August 2, 2021, the Debtor filed her Schedules of Assets and Liabilities (the

"Schedules") and Statement of Financial Affairs (the "SOFA"). *In re Laura Patricia Heras,* 21-

11005, Dkt. No. 20.

43.     On Schedule A/B of the Debtor's Schedules, the Debtor lists, among other

interests, an interest in land located at 1725 Sunkissed Drive, Tarpon Springs, Florida (the

"Florida Property"). *Id*. at p. 7. The Debtor identifies the current value of the Florida Property as

$900,000.00 and claims an ownership interest of $450,000.00 as the 50% beneficiary of the

Heras Family Real Estate Trust that owns the land. *Id.*

44.     Also, on Schedule A/B of the Debtor's Schedules, the Debtor lists two bank

accounts to which she owns or has a legal or equitable interest. *Id*. at p. 10. At the time of the

bankruptcy filing, the Debtor listed the bank accounts with the following values: Citizens Bank

with a value of $146.34 and Santander Bank with a value of $286.55. *Id.*

45.    The Debtor did not identify any other bank accounts to which she owns or has any

legal or equitable interest.

46.    Also, on Schedule A/B of the Debtor's Schedules, the Debtor lists a 5%

ownership interest in Seal Watch with an unknown value. *Id.*

47.    Also, on Schedule A/B of the Debtor's Schedules, other than her interest in the

Heras Family Real Estate Trust, the Debtor states that she has no interest in any other trusts. *Id.*

at p. 11.

48.    Also, on Schedule A/B of the Debtor's Schedules, the Debtor states that she does

not own or have any legal or equitable interest in any business-related property. *Id.* at p. 12.

49.    On Schedule I of the Debtor's Schedules, the Debtor states that her monthly

income is $2,877.72. *Id.* at pp. 27-28.

50.    On Schedule J of the Debtor's Schedules, the Debtor states that her monthly

expenses are $16,927.00, and that her monthly net income is -$14,049.28. *Id.* at pp. 30-31.

51.    In the Debtor's SOFA, other than the disclosed income from employment

(Question 4), the Debtor states that she did not receive any other income from 2019 through the

date of her bankruptcy filing (Question 5). *Id.* at p. 34.

52.     In the Debtor's SOFA, the Debtor states within one year of the bankruptcy filing,

that no accounts or instruments held in the Debtor's name, or for her benefit, were closed, sold,

moved or transferred (Question 20). *Id.* at p. 38.

53.    In the Debtor's SOFA, the Debtor states that within four years of the bankruptcy

filing, other than being a member of Seal View LLC and Seal Watch, the Debtor did not own and

was not a member of any other limited liability company (Question 27).  *Id*. at p. 39.  The Debtor

did not list any interest or state she was a member or an officer of TCNR or LRNCT.

H.    The Debtor's Document Production

54.    On September 24, 2021, the United States Trustee filed an Assented-To Motion

for Document Production under Fed. R. Bankr. P. 2004.  The Debtor assented to the relief

requested and agreed to make the document production available to counsel to Newmarket.  *In re*

*Laura Patricia Heras*, 21-11005, Dkt. No. 50.

55.    Over the next couple of months, the Debtor provided various documents that

showed inaccurate or incomplete information in the Schedules and SOFA, revealed concealed

assets, and demonstrated the use of undisclosed corporate entity bank accounts to deposit,

transfer and use funds for personal purposes.

56.    At the U.S. Trustee's request, the Debtor supplied bank account statements for the

disclosed Citizens and Santander accounts, but also previously undisclosed bank accounts for

TCNR and LRNCT.  The Debtor also supplied bank account statements for Seal Watch.

57.    Despite the U.S. Trustee's request for a list of all bank accounts in which the

Debtor was a named beneficiary or in which she has an interest for the period dating back to

January 1, 2017, the Debtor did not fully comply and provided incomplete bank account

information for this period.

58.    Also, despite the U.S. Trustee's request that the Debtor provide complete account

documents, whether individual, joint, partnership, LLC, trust, realty trust or corporate for

accounts in which she had (or has) an interest or signatory power or was named as a beneficiary

for the period dating back to January 1, 2019, including the Citizen Bank and Santander accounts

and accounts at TIAA, First Republic, SunTrust Bank, Valley National Bank, the Debtor did not

fully comply and provided incomplete account documents for the period requested.

59.     For the Debtor's disclosed Citizens Bank account, in the months preceding Mr.

Heras's bankruptcy filing, the produced bank statements reveal multiple substantial deposits, the

originations of which are unknown (for example, more than $25,000 in March 2021), especially

given the stated incomes of Mr. Heras and the Debtor.

60.     For the Debtor's disclosed Santander Bank account, the produced bank statements

reveal a practice of funding that account, in part, through a financial services platform called

CashApp, the origination of those deposited funds are not readily traceable through the Santander

Bank statements.

61.     Also, on the Santander Bank account statements, there are numerous deposits,

some of which are substantial ($12,000 on January 21, 2021, $4,669.63 on June 2, 2021,

$23,184.73 on June 18, 2021 and $7,000 on June 25, 2021 (apparently from an undisclosed

LRNCT account)) that appear unrelated to any earned income through employment and for

which the origination of the deposited funds is not readily traceable, especially given the stated

incomes of Mr. Heras and the Debtor.

62.     The Santander Bank account statements also show regular monthly payments

made to East Cambridge Savings Bank, although that bank is not listed in the Debtor's Schedules

or SOFA as having any interest in the Debtor's property.

63.     The Debtor also provided bank statements for two accounts from First Republic

Bank, one for each of TCNR (account ending in 6722) and LRNCT (account ending in 3808).

Neither of these accounts were disclosed in the TCNR or LRNCT bankruptcy cases, although

TCNR had listed a closed First Republic Bank account (account ending in 3547) for which no statements were provided.

64.     The produced TCNR and LRNCT First Republic Bank account statements reveal dozens of deposits and transfers between accounts (including substantial transfers to what are identified only as "personal" accounts), debits for CashApp and other debits, withdrawals and purchases that have no meaningful relationship to the TCNR or LRNCT businesses but seemingly used for personal and/or family expenditures.

65.     The produced TCNR and LRNCT First Republic Bank account statements demonstrate that tens of thousands of dollars were deposited into and transferred from these accounts with no meaningful relationship to the TCNR or LRNCT businesses.

66.     The Debtor also provided bank statements for a previously undisclosed LRNCT bank account with TIAA Bank (account ending in 7891).  Like the First Republic Bank statements, these bank statements also reveal dozens of deposits and transfers between accounts, some still undisclosed accounts, CashApp debits and other debits, withdrawals and purchases with significant funds being expended that have no meaningful relationship to the LRNCT business but seemingly used for personal and/or family expenditures.  None of these account transactions were disclosed in the LRNCT Statement of Financial Affairs despite having occurred in the months preceding the filing and continuing _after_ the bankruptcy filing.

67.     The produced LRNCT TIAA Bank account statements demonstrate that tens of thousands of dollars were deposited into and transferred from this account with no meaningful relationship to the LRNCT business.

68.    Upon information belief, there are several other bank accounts that the Debtor has or had a legal or equitable interest in that have not been disclosed, whether at TIAA, First Republic Bank or other institutions.

69.    In connection with the U.S. Trustee's request, the Debtor also provided various documents related to Seal Watch.

70.    Despite the Debtor's asserted 5% interest in the entity, the Debtor provided a Membership Interest Pledge Agreement that was executed on July 10, 2020 that shows that the Debtor's interest in Seal Watch is 33.3%.  Mr. Heras is listed as having a 33.3% interest and so too is Carla Guidici, upon information and belief, the Debtor's mother.

71.    The Debtor also provided real estate closing documents for the Nantucket Properties that demonstrate, that on or about March 31, 2021, the cash distribution to Seal Watch on account of the sale of the Nantucket Properties was $259,272.39.

72.    The Debtor also provided bank statements for a Seal Watch bank account with TIAA Bank (account ending in 1972).

73.    Seal Watch was a real estate holding company that only owned the Nantucket Properties.  The produced Seal Watch TIAA Bank statements reveal dozens of deposits and transfers between accounts, some still undisclosed accounts, CashApp debits and other debits, withdrawals and purchases with significant funds being expended that have no meaningful relationship to the Seal Watch business but seemingly used for personal and/or family expenditures.

74.    Prior to the sale of the Nantucket Properties, the Seal Watch TIAA Bank account statements demonstrate that tens of thousands of dollars were deposited into and transferred from

this account with no meaningful relationship to the Seal Watch business, including an entry on

March 17, 2021 for a $4,200 wire to the Debtor.

75.     On April 1, 2021, the Seal Watch TIAA Bank account statements show a deposit

of $264,359.23 as a result of the sale of the Nantucket Properties.  As a result of the deposit, the

balance in the account was $266,632.12.

76.     On April 2, 2021, a $60,000 transfer was made to the Debtor's Santander Bank

account.  The Debtor testified that the funds deposited into the Santander account were used to

pay various debts and legal bills.  After the Santander transfer, more than $200,000 remained in

the Seal Watch TIAA Bank account.

77.     By July 1, 2021, three months after the sale of the Nantucket Properties, the

balance in the Seal Watch TIAA Bank account was $301.82.  In addition to the numerous

CashApp debits, withdrawals and transfers, the TIAA Bank statements reveal transfers to

financial accounts or purchases of financial interests that neither the Debtor or Mr. Heras

disclosed.

78.     Separate from the bank account requests, the United States Trustee requested

information concerning 19 Simpson Street Realty Trust, a trust that the Debtor, upon information

and belief, is the trustee and which owns real property at 19 Simpson Street, Newton,

Massachusetts.  The Debtor did not disclose the 19 Simpson Street Realty Trust in her Schedules

and, despite requests, the trust has never been produced.

79.     At her Section 341 Meeting, the Debtor testified that the Florida Property is an

ocean front lot with no structure, but with an asserted value of approximately $900,000.00.  The

Debtor claimed a 50% interest in the Florida Property by virtue of her interest in the Heras

Family Real Estate Trust.  According to Zillow, the property is identified as presently having a

pending sale.  There have been no filings in the Debtor's case concerning the sale of the Florida

Property.

## COUNT I

### NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

80.     Plaintiff restates and incorporates herein each and every allegation alleged in

paragraphs 1 through and including 79 as if set out in full herein.

81.     Bankruptcy Code § 523 (a)(2)(A) provides, in relevant part, that:

(a)     A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or
1328(b) of this title does not discharge an individual debtor from
any debt—

(2)     for money, property, services, or an extension, renewal, or
refinancing of credit, to the extent obtained by—

(A)     false pretenses, a false representation, or actual fraud, other than a
statement respecting the debtor's or an insider's financial condition
….

82.      As set forth in the Judgment Order in the State Court Action, the court ruled,

among other things, that the Defendants "unlawfully [took] rental payments to which they were

plainly not entitled causing further expense …"  Judgment Order, p. 6.  The court explained that

the "Defendants also diverted to themselves $296,295.06 in rent payments, in violation of their

responsibilities under the Notes."  *Id*.  The court ruled that the "Defendants improperly took for

themselves rent payments from a tenant (Cowabungas) that were supposed to go to [Newmarket]

during the period January 2019 to June 2020, and that those diverted payment amounted to

$296,295.06 …."  *Id.*

83.     All or part of the debt owed to Plaintiff, as evidenced by the Judgment entered

against the Debtor, is non-dischargeable as it is a debt for money, property, services, or an

extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false

representation, or actual fraud within the meaning of Section 523(a)(2)(A) of the Bankruptcy

Code.

## COUNT II

### NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT
### UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

84.     Plaintiff restates and incorporates herein each and every allegation alleged in

paragraphs 1 through and including 83 as if set out in full herein.

85.     Bankruptcy Code § 523 (a)(4) provides, in relevant part, that:

(a)     A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or
        1328(b) of this title does not discharge an individual debtor from
        any debt—

(4)     for fraud or defalcation while acting in a fiduciary capacity,
        embezzlement, or larceny ….

86.     As set forth in the Judgment Order in the State Court Action, the court ruled,

among other things, that the Defendants "unlawfully [took] rental payments to which they were

plainly not entitled causing further expense …" Judgment Order, p. 6.  The court explained that

the "Defendants also diverted to themselves $296,295.06 in rent payments, in violation of their

responsibilities under the Notes." *Id*.  The court ruled that the "Defendants improperly took for

themselves rent payments from a tenant (Cowabungas) that were supposed to go to [Newmarket]

during the period January 2019 to June 2020, and that those diverted payment amounted to

$296,295.06 …." *Id.*

87.     All or part of the debt owed to Plaintiff, as evidenced by the Judgment entered

against the Debtor, is non-dischargeable as it is a debt for fraud or defalcation while acting in a

fiduciary capacity, embezzlement, or larceny within the meaning of Section 523(a)(4) of the

Bankruptcy Code.

## COUNT III

### NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT
### UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

88.     Plaintiff restates and incorporates herein each and every allegation alleged in

paragraphs 1 through and including 87 as if set out in full herein.

89.     Bankruptcy Code § 523 (a)(6) provides, in relevant part, that:

(a)     A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or
        1328(b) of this title does not discharge an individual debtor from
        any debt—

(6)     or willful and malicious injury by the debtor to another entity or to
        the property of another entity …

90.     As set forth in the Judgment Order in the State Court Action, the court ruled,

among other things, that the Defendants "unlawfully [took] rental payments to which they were

plainly not entitled causing further expense …"  Judgment Order, p. 6.  The court explained that

the "Defendants also diverted to themselves $296,295.06 in rent payments, in violation of their

responsibilities under the Notes."  *Id.*  The court ruled that the "Defendants improperly took for

themselves rent payments from a tenant (Cowabungas) that were supposed to go to [Newmarket]

during the period January 2019 to June 2020, and that those diverted payment amounted to

$296,295.06 …."  *Id.*

91.     All or part of the debt owed to Plaintiff, as evidenced by the Judgment entered

against the Debtor, is non-dischargeable as it is a debt for willful and malicious injury cause by

the Debtor within the meaning of Section 523(a)(6) of the Bankruptcy Code.

## COUNT IV

## OBJECTION TO DEBTOR'S DISCHARGE
## UNDER SECTION 727(a)(2) OF THE BANKRUPTCY CODE

92.     Plaintiff restates and incorporates herein each and every allegation alleged in

paragraphs 1 through and including 91 as if set out in full herein.

93.     Bankruptcy Code § 727 (a)(2) provides, in relevant part, that:

(a)     The court shall grant the debtor a discharge, unless—

(2)     the debtor, with intent to hinder, delay, or defraud a creditor or an
        officer of the estate charged with custody of property under this
        title, has transferred, removed, destroyed, mutilated, or concealed,
        or has permitted to be transferred, removed, destroyed, mutilated,
        or concealed—
(A)     property of the debtor, within one year before the date of
        the filing of the petition; or
(B)     property of the estate, after the date of the filing of the
        petition ….

94.     The Debtor, individually and in her capacity as member and manager of TCNR,

LRNCT and Seal Watch, operated or oversaw the operation of these entities to conceal assets and

maintain banking and other financial accounts that funded personal and family expenses, mostly

in accounts that were not disclosed in the Debtor's Schedules and SOFA.  The Debtor

transferred, removed or concealed or permitted to be transferred, removed and concealed

property of the Debtor within one year before the date of the filing of the petition.

95.     By virtue of the foregoing, the Debtor's discharge should be denied under Section

727(a)(2) of the Bankruptcy Code.

## COUNT V

## OBJECTION TO DEBTOR'S DISCHARGE
## UNDER SECTION 727(a)(3) OF THE BANKRUPTCY CODE

96.     Plaintiff restates and incorporates herein each and every allegation alleged in paragraphs 1 through and including 95 as if set out in full herein.

97.     Bankruptcy Code § 727 (a)(3) provides, in relevant part, that:

(a)     The court shall grant the debtor a discharge, unless—

(3)     the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case ….

98.     The Debtor, individually and in her capacity as member and manager of TCNR, LRNCT and Seal Watch, operated or oversaw the operation of these entities to conceal assets and maintain banking and other financial accounts that funded personal expenses.  The banking transactions reveal hundreds of transfers, deposits and purchases that funded personal and family expenses, mostly in accounts that were concealed and otherwise not disclosed in the Debtor's Schedules and SOFA, from which the Debtor's financial condition might be ascertained.

99.     By virtue of the foregoing, the Debtor's discharge should be denied under Section 727(a)(3) of the Bankruptcy Code.

## COUNT VI

### OBJECTION TO DEBTOR'S DISCHARGE
### UNDER SECTION 727(a)(4) OF THE BANKRUPTCY CODE

100.    Plaintiff restates and incorporates herein each and every allegation alleged in paragraphs 1 through and including 99 as if set out in full herein.

101.    Bankruptcy Code § 727 (a)(4) provides, in relevant part, that:

(a)     The court shall grant the debtor a discharge, unless—

(4)     the debtor knowingly and fraudulently, in or in connection with the case—

    (A)    made a false oath or account;

    (B)    presented or used a false claim;

    (C)    gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

    (D)    withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs ….

102.    The Debtor knowingly and fraudulent, in or in connection with the case, made a false oath or account, in that she did not disclose her Schedules or SOFA her role and membership interests in TCNR and LRNCT, inaccurately or inconsistently represented her interests in Seal Watch, failed to disclose her role in the 19 Simpson Street Realty Trust, and received funds far in excess of the income disclosed.  Together with Mr. Heras, tens of thousands of dollars were spent and/or transferred within the year before the Debtor's filing bankruptcy.

103.    By virtue of the Debtor's false representations and omissions, and the oath she took concerning the veracity of her submissions, the Debtor's discharge should be denied under Section 727(a)(4) of the Bankruptcy Code.

WHEREFORE, Newmarket respectfully requests that this Court enter a Judgment determining the debt owed to Newmarket, plus attorneys' fees, costs and statutory interest, is non-dischargeable under Bankruptcy Code §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) or, in the alternative, denying the Debtor's discharge under Bankruptcy Code §§ 727(a)(2), 727(a)(3) and 727(a)(4), and granting Newmarket such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

NEWMARKET TRIANGLE LLC

By Its Attorneys,

Dated: June 21, 2022                    /s/ Christopher M. Candon
                                        Christopher M. Candon (BBO#650855)
                                        Sheehan Phinney Bass & Green PA
                                        1000 Elm Street, P.O. Box 3701
                                        Manchester, New Hampshire 03105-3701
                                        (603) 627-8168
                                        ccandon@sheehan.com

                                        Chaz R. Fisher (BBO# 649059)
                                        Fisher Legal, P.A.
                                        217 Hanover Street, #184
                                        Boston, Massachusetts 02113
                                        (617) 851-1560
                                        chaz@fisherlegalpa.com